Good morning to each of you. My name is Howard R. Price. I represent Mr. Espinoza, the appellate who is seeking to have the sentence remanded so that it can be done correctly. The fulcrum, I think the starting and beginning point of the analysis of this case is that not only did the district court and the government and the trial counsel and the district court all misapply the applicable guideline analysis to the loss calculation in this case. This is a fraud case and loss is the most critical aspect of sentencing. Here the loss is correctly calculated. Do you have any question about the district court's ultimate calculation of what the guideline sentence? Yes, in that, in that, your honor. Well, he lowered it substantially from what was recommended. No, your honor, he maxed them out. He gave him a five-year sentence. No, no, I'm not asking what his sentence was. I said his guideline calculation, from which he multiplied the sentence by, I think, three and a half times. He calculated by error what ultimately might be the correct guideline calculation. But the critical point here I'm trying to make is if the district court knew that the loss was substantially less, he would not have bumped them up to the maximum on the grounds that it was sufficiently agreed. Well, he adopted your client's loss calculation. He adopted my client's trial counsel erroneous conception, as did the government, as did the court. So that was, he adopted your client's position in that regard? Yes. Okay. He accepted it. Everybody worked on the wrong calculation. That's clear. That's conceded by the government. And the critical issue here is that the maximum sentence imposed was because the district court felt that the defendant, extreme greed, quote, unquote, warranted this departure or various or enhancement, whatever you would call it nowadays. If the extreme greed is shown as it will be, either on the 2255 or on remand, that the extreme greed was half of what was almost half of what was accepted, then the district court wouldn't have a basis to say this was the reason to go upward beyond the guidelines, that it wasn't extreme greed. The other point I wanted to make and reserve whatever time, absolutely, any questions you have, is that the district court essentially punished the defendant because of his exorbitant lifestyle. Now, I've been practicing criminal law for surprisingly 45 years now. I've not had one client who has taken property by fraud or otherwise from somebody else and donated it to charity. So to punish a defendant because he used the money to buy cars and watches is what most criminal defendants do, among other things. So what we have here are vague, amorphous, and practically speaking, uncognizable factors. Is it uncognizable that a person steals money and then uses it to buy an Aston Martin or a Jaguar or a Rolls Royce? I mean, you can't take that into consideration? As opposed to a different car or using the money to buy cocaine or to do some other kind of stupid lifestyle? I think that's what most criminal defendants do. That's why they're defendants in the first place. I mean, where are we going to draw a line as to what a criminal defendant does with nefariously obtained money and then to punish him? But there is some argument that if you have an Aston Martin, a Jaguar, and live in a very high lifestyle, you are then enjoying the benefits of your ill-gotten gains, and that that is something to be punished. In addition to taking the money, the use of the money is also something to be punished. Well, in all due respect, one, I drive a Jaguar, and two... You know, some of those Jaguars are kind of crummy cars. I would forgive that. It's a 2003 Jaguar. Oh, that was a good year. I've been punishing myself, myself. But the point really is, Your Honor, where are we going to draw the line as to how a criminal defendant should properly spend money, ill-gotten gains? I mean, it's a standard that cannot be applied rationally by a court. Really? I do not think so. I mean, if the court could say, you're going to steal money, but here's the proper way of using the money. Give it to charity. No, I don't think they're saying, here's the proper way. They're just saying, you benefited from your ill-gotten gains in a particular way, and therefore, in terms of the punishment to be rendered, it appears that I can, I, the district court judge, can take that into consideration as a factor. You've flown off to Barbados. You've done this. You've done that. You say, fine. No one's expecting you to give to the Red Cross, but you've benefited in a particular way from your ill-gotten gains, and therefore, it's appropriate in terms of punishment that I take that into account. Well, I disagree most respectfully. I think this is the motivation for committing a crime, is because you want to use the money for your own self-gain in any way that one, in that position. Well, if you stole it to feed your hungry children, would you be entitled to a downward variance or departure, or would that just be a normal? I'm sorry, I didn't quite understand you there. I said, if you stole the money to feed bread to your hungry children, would that be a normal sentence, or would you be entitled to a downward? I've never represented Jean Valjean, but... Well, it's a little late to try. You're right. But, I mean, if somebody were to be stealing for salubrious, proper reasons, it might be somewhat contradictory. Proper reasons? I would think. I most respectfully disagree with that characterization. You're right. The question is, you would be argued, as a practitioner of many years of civil defense, look what this person did with the money. He fed his children. He gave to St. Anne's. He did this. He did that. And those are factors that traditionally courts take into consideration. Now, how to weigh it, you know, that's another issue. But you're saying, gee, the judge shouldn't have even considered it. Well, I think there's a difference in kind between stealing money to support your family and stealing money for the usual reason, which is to either put it up your nose or drive an Aston Martin or whatever the typical reason is that. Are those factors that are accounted for within the guidelines, so that you would say if the sentence is 15 to 30 years and he uses the money for his children, I'll give him 15. If he uses it for an Aston Martin, I'll give him 30. Or are those factors that mean you can go below the guidelines and above the guidelines? Well, I think it's a slippery slope. Everything is in the law. Well, I think it's a slippery slope to start deciding how money that is stolen is used for the wrong reason. In other words, if you want to say that somebody is stealing to support their family or their mother, that's one thing. But to the typical run-of-the-mind case is somebody is stealing for their own purposes. And usually it's not, but for benevolent purposes. And that is all considered to be in the guidelines. There are a lot of cases out there, a lot of cases where people, especially in white-collar cases where people submit false financials and so forth to keep the business afloat, to keep the business afloat, to keep things going, to pay back some other investors. I mean, that happens all the time. That's not unusual. And defense counsel frequently say, look, this is what this person did with the money. And you're telling us, no, no, the judge shouldn't have even looked at that. That is a difference in kind between using the money in the more typical reason, that people steal money, and use it to buy property or to go to Las Vegas to gamble. These are the things that we see all the time. And I don't think that could, which is the typical case, much more typical than doing something for a benevolent reason that's illegal, to then punish the defendant because of his lifestyle. Wasn't another factor that the sentence was imposed based upon what co-conspirators got to avoid what 35538 describes as unwarranted disparities? Well, there was. We pointed out the disparity in this case. That was substantial. When you look at the loss as it should be properly calculated, and it will be someday properly calculated, I hope, you can see that his loss was less than other defendants who didn't even do a day in jail. Could I just get the figures straight from you? What are the figures that the district court reduced it to? What was it before he reduced it? What did he reduce it to? And what do you say is the correct figure? The amount of loss correctly calculated would be a little over $300,000. It was all accepted by the government, defense counsel, and the court to be over $600,000. If it's approximately half of what they were working on, the district court on remand would have a hard time saying this was extreme greed. What did the pre-sentence report say it was? Well, initially it started at probably $2.3 million. And then the district court discounted and rejected all of the government's claimed relevant conduct, role in the offense, and the amount of loss and reduced it pretty much by agreement because everybody was working on the wrong application of the guidelines. It's a little over $600,000. And to be more specific, they mistakenly allowed the calculation to include costs of the foreclosure and the interest that the banks had to pay. Now, let me make – I think I've got this right. After the district judge has sort of worked his way through this, we end up with a guideline range of 12 to 18 months. Is that right? That would be correct. And is that the right guideline range in your view? That would probably – it could be less if on remand, if the guideline was down to that $300,000 figure, I think that the loss would then bring it down to 10 to 14. And the judge moves from what he thought was the correct guideline range of 12 to 18 and it gives him 60 months. Correct. That's essentially what happened. Yeah, but by the time the judge is finished with the guideline range, he's down to 12 to 18 months. He started off at 12 to 18 when it could have been less and should have been less if the guideline had been corrected. But it wouldn't have been much less from what you say. It would have been 10 to what? I think it would be 10 to 14. Instead of 12 to 18. Yes, because – And he went to 60. Yes. And it seems unlikely that he would have cared a lot whether it was 10 to 14 instead of 12 to 18 when it ended up at 60. That difference between 10 to 14 and 12 to 18 doesn't seem to – it doesn't seem that would make a great difference in his decision to go to 60. It seems to me that we don't know what the district court would do, any district court, particularly this one, if it knew what the loss was actually calculated to be correct. And that's the problem in the case, is that the court was working on an assumption that the loss was this, it was much less, and then he punished the defendant because of extreme greed, which is referring to this loss amount. Okay. Incorrectly calculated. Well, greed doesn't necessarily correlate to the amount he got or the amount of loss he caused. Greed is a character flaw. If I heard you correctly, they included the cost and the interest. Incorrect. No, no, I'm saying something different, and you don't really need to respond. Greed is a character flaw. I can be really greedy even if I have gotten nothing. And so what he got doesn't necessarily correlate to whether he's greedy or not. I think greed is inextricably interwoven into the loss calculation. I don't think greed. Well, we've talked about that before. He also relied on the fact that there were multiple offenses, is that right? The multiple offenses were all grouped one, so you have a double counting issue, as I pointed out. And secondly, he said that these offenses were serious. One of the serious offenses was a misdemeanor. During the maximum one year. The other so-called serious offense was a bankruptcy that the defendant voluntarily dismissed at no loss to anybody. So these offenses were really not serious. So you have him pleading to five offenses, all of which are inextricably grouped together, and he used that as a factor to bump them to the maximum. Are these, the fact that there were multiple offenses accounted for within the guidelines? They're grouped. So I think the calculation had to be and was taken into consideration by the guidelines. And nevertheless, the district court punished the defendant for the offenses. And I want to point out that the district court told the defendant, you're only going to be sentenced for the offenses that you admitted to, 12 out of the 32 properties. And nevertheless, he, the district court, punished the defendant because of things that were not admitted to. Well, tax evasion was admitted to, wasn't it? I'm sorry, Your Honor? Was tax evasion admitted to? Yes. In addition to the fraud, there was also the tax evasion. Yes, which was paid back. Well, what does that mean? Well, and it was paid back before he was even invited for an investigation. Oh, so no harm, no foul, that's right. Well, I mean, it is not a serious, it's an offense, but to say it's a serious offense. I'll remember that argument. Well, all felonies are serious by definition. Oh, well, I mean, but there is a difference, isn't there, between you steal some money and then you don't pay taxes on it? I mean, you could say, well, of course, those criminals don't. True enough. But the point is to call that a serious offense to warrant an increase beyond what the government and the probation department was asking for doesn't seem to be rational, which is the touchstone of all the sentencing in federal court. I would point out to the panel that on November 23rd of last year in U.S. v. Rudd, the court talked about a substantively reasonable sentence, and to quote from that, the touchstone of reasonableness is whether the record on a whole reflects a rational and meaningful consideration of the factors enumerated in section 3553. I don't think this was a rational sentencing when you look at what occurred here. They started off with the wrong calculation from Jump Street. Okay? I mean, the whole thing is procedurally flawed, and it led to a substantively unreasonable sentence because of the disparity. The wrong calculation they started out to was a calculation that was given ultimately by the defendant. The defense counsel, governance counsel, and the court all miscalculated. Okay. Now, we talked about whether this is invited error or whether this is a forfeiture. It wasn't invited error. That's clear. And no attorney, especially Mr. Duff in this case, would have knowingly and mistakenly allowed for the miscalculation had he known what the correct application of the guideline was in calculating loss. So whether we come back here again on an IAC claim or have this go back on remand, which is what I'm requesting, and have it done correctly, let the district court decide when he knows exactly what the loss was. It's pointed out that the difference between those two calculations is very, very slight. I mean, if that's the difference, you wouldn't say, okay, now the 60 months. You say, now the 60 months is reasonable. Now that we know that the sentencing guideline range is what, 10 to 18, 10 to 14, 12? I mean, that doesn't make this ultimate sentence less or more reasonable that you had the correct loss calculation. You know, again, in all due respect. Disagree. The point is this. If you're going to bump the defendant because of extreme greed and the actual loss correctly calculated is half of what you contemplated the first time around, how could you then say this is extreme greed? Well, but it's not just extreme greed. The judge also said this person has an unsatiable appetite for committing frauds. Now, you can say, well, that's a form of greed. But it's because of the multiple frauds that were involved that fraud defrauded the government, defrauded the victims in the case. That's something that could be considered. Multiple instances of fraud were less than one of the co-defendants who got a much lesser sentence. And what did that co-defendant do? That was Mr. Rodriguez or Dominguez, whatever his correct name was. Did he plead? Did he go to trial? He pled. Okay. He pled. And it seems, although the record is not clear, that he must have cooperated with the government to get such a light sentence. But that's his answer. Did he get a 5K1? I don't know the answer to that. I'm sorry. Okay. But that's a factor. You can take all that into consideration. Well, I think that maybe when the government counsel stands here, maybe the same question would be asked of her because she would know whether Mr. Rodriguez, who was equally culpable, if not more so, and got a sentence of, I think, six months or less, and all the other defendants got probation, how is it rational in allowing for a meaningful appeal of the record by the court, which is basically the standard in the circuit, how does this disparity hold up? You say we shouldn't consider the fact that your client used the proceeds to buy a Lamborghini, two Ferraris, a Rolex, and a Hummer. Well. You say all that, that's something that just. I don't think that's a rational consideration to decide to give a defendant a sentence beyond the applicable guidelines, what he does with the money. Okay. I just don't think that's rational because most of them, and I can tell you from experience, most of them waste the money. They don't invest it in General Motors or anything else. Well, he's helping the economy. I'll give you that. He is, in a very strange way. All right. Thank you, counsel. Thank you. Good morning, Your Honor. Alka Sager for the United States in this appeal. If I may, I'd like to address the issue that the court has raised with respect to the guideline calculation. Just to make it clear that even with the calculation of loss that the defendant is now urging this court to find, the guideline range would not change at all. It would still be the same guideline range. Which range is that? That is a range of 12 to 18 months. And you say whether it was $600,000 or $300,000, it would be that same range? And if I may just elaborate on the figures, the district court found the loss to be $614,000. This was the figure that the defendant asked the district court to find. Based on the $600,000 loss figure, and we're looking at the 2000 edition of the guidelines. This is the figure that the defendant, the government, and the probation office, the pre-sentence office? No, Your Honor. What did the government say was the proper range? The government argued that the range should be 37, 30 to 37 months. Because the amount to over $2 million, Your Honor. The pre-sentence report and the government asked the district court to find the loss to be over $2 million. And that results in a guideline range of 30 to 37 months. That does include a four-level role enhancement. But the district court rejected that loss determination, found the loss to be what defendant conceded to, which was $600,000, and reduced the guideline range accordingly. So with a base offense level of 6 and a 10-level enhancement for a guideline range, for a loss in the range of $500,000 to $800,000, the total offense level was 16. And after discounting 3 for acceptance of responsibility, the adjusted offense level was 13 with a guideline range of 12 to 18 months. What the defendant is now asking the court to find is that the guideline, that the loss should be reduced from the $600,000-plus figure to $482,000 to take into account interest charges, which were erroneously included in the loss figure. And the government conceded that the loss should not include interest. So at $482,000, the guideline range drops from a range of $500,000 to $800,000 to a range that's $350,000 to $500,000. And what that means for guideline calculations is that with a base offense level of 6, there is a 9-level increase for loss. That results in an offense level of 15. But now the defendant's only entitled to a 2-level reduction for acceptance, so we're back at 13. Now, in his reply brief, the defendant argues that the loss figure of $482,000 should be further reduced by foreclosure costs. And the government obviously hasn't had a chance to respond to that in its brief, but the government submits that foreclosure costs were properly calculated in loss because unlike interest charges, which are not included in loss to prevent a victim from earning income that they wouldn't otherwise have earned but for the fraud, the foreclosure costs are actual out-of-pocket expenditures that the lenders incurred when they had to foreclose on these properties. Let's assume for a moment that one party says it's 12 to 18. The government says it would have been 12 to 18 anyway. And the defendant says, well, it should be 10 to 14. Let's assume for a moment that the district judge was told that it was 10 to 14 instead of 12 to 18, and he still gave the 60 bucks. Do you think there would be a great difference in your argument? No, Your Honor. Okay, then argue it on the basis that it was either 10 to 14, 12 to 18, and it wouldn't matter. It wouldn't matter because the district court Okay, so then let's go on to the other problems. The other problems, as I understand it, are the thing we've discussed exhaustively, whether the fact that he used it for fine automobiles instead of giving it to the Red Cross or helping his mother or helping the people he had defrauded or whatever else people do with the money they steal. I don't know. That's one of the issues, whether he used it in a way that showed his greed and that greed is one factor that your opponent says shouldn't be taken into account. And the other factor that it was was that there were multiple offenses which your opponent says are already taken care, accounted for in the guidelines. A third factor, I guess, is an increase from whatever is 12 to 18, whatever, to 50, an unreasonable increase under these circumstances is a substantially unreasonable sentence. What do you have to say about those three points? The district court was entitled to find that the loss figure, whatever it is in this case, whether it's the 482,000 or the 600,000 figure, substantially understated the nature of the conduct that the defendant engaged in and that it also did not adequately take into account the full range of criminal conduct that the defendant had engaged in, the bankruptcy fraud, the tax fraud, the money laundering charge. The district court was entitled to take into account what the defendant's motive was. The pre-sentence report recognized that the defendant's extreme greed was one factor and the pre-sentence officer recommended an upward variance based on that factor in addition to the whole universe of the nature of the offenses the defendant was convicted of. And the district court was entitled to take that into account. What the defendant does with their money is a factor that should be considered in determining whether a sentence is appropriate to affect Do defendants who commit these kinds of business frauds generally have a beneficent motive for committing those crimes? What is the general motive, would you say? Well, the general motive is to receive money, but defendants do different things with their money. Some people use their money to invest in other schemes, to keep schemes going, to keep being able to give victims returns on, purported returns on their investments. Some people steal money to finance I know all of those things you're describing. I don't want to suggest I disagree with one more experienced brother here who hears these cases all the time. But isn't it generally greed? It is greed, but a defendant wasn't being sentenced because of the ostentatious lifestyle that he was leading. He was being sentenced because of the fraud that he had committed that generated those proceeds. It's not a crime to spend money on Hummers and fancy cars and Rolex watches, but it's a crime when you obtain that money through fraud. And it's a crime when you file... Is obtaining the money through fraud generally covered by the guidelines? It is, but the district court is entitled to find that the loss amount understates the seriousness of the conduct. Yes, that I understand, but the greed is not a separate factor. The greed can be a factor under 3553A. It is a factor that goes to the history and the characteristics of the defendant. It's a factor that goes to whether a sentence, a particular sentence, is necessary to promote respect for the law, to effect just punishment, to protect the public from further crimes of the defendant. It's a factor that the court can consider. I don't know what I'm saying. From what you've said, I didn't understand why this defendant, because the fact that he was greedy was any different from the ordinary defendant sentenced under the guidelines instead of having a three-fold increase. This defendant at sentencing claimed that the loss for HUD fraud was only $600,000. And this defendant claimed at sentencing that for purposes of tax loss, he had unreported income of less than $2.3 million. To rebut those charges, the government introduced evidence before the district court that the defendant had expended $7.4 million in a five-year period. That's how the issue of greed came to the court, that the defendant had in one year alone, the year that he filed for bankruptcy, in 1999, the defendant had spent $2 million, including the purchase of a home for over $1.1 million in Newport Coast. All of these factors came to the district court's attention during the many sentencing proceedings that were held in this case because the defendant argued to the court that he hadn't really profited from the crime. He tried to argue that the loss for HUD fraud was only $600,000. He disputed that he had any unreported income, and the government introduced evidence of all of his expenditures to prove that there was a fraud that was committed here, he had all this money, and there was no legitimate explanation for how he had obtained that money. And the court was entitled, at the time of sentencing, to find that even though it didn't believe that the government had proved the $2.2 million loss figure the government urged the court to find, that the loss figure that defendant conceded to, the $600,000, didn't adequately take into account the nature of the crimes the defendant had committed and substantially understated the seriousness of the different types of offenses that the defendant had committed. And with respect to the disparity argument, the district court was entitled to find that the other persons who had been charged with variance of the HUD fraud scheme were distinguished from the defendant because they had not committed the additional other crimes that the defendant had committed, and because the defendant was substantially more involved in the HUD fraud than these other defendants were. And the district court held a series of evidentiary hearings in this case. It asked the parties to submit filing after filing in response to questions it had about this case. Its decision to sentence out of the guidelines was a reasoned decision. So if I understand then you're saying that the reason for the increase is not really that it was greedy, but that there were related offenses which warranted the increase. As well as the nature of the fraud, the repeated acts of fraud that comprised the HUD fraud conspiracy. The extreme greed was one of many factors that the district court took into account in imposing the sentence it did in this case. Unless there are any further questions, the government would submit on its brief. Thank you. Thank you. I think the governor's counsel has demonstrated why this should be remanded because there is so much confusion in the record as to what the loss is, would have been, and what the district court would have done. Did you make the argument about foreclosure costs to the district judge? None of this was brought up. That's the point, Your Honor. None of it was correctly brought up. Let me make sure you understand my question. At trial, did you or was it somebody else representing the trial? Did Mr. Duff at trial? There's no trial, it was a plea. Excuse me. Did Mr. Duff during the sentencing proceeding in front of the district judge talk about the foreclosure costs that you now think? So we're talking about plain error? Yes, we are. That was brief whether this is plain error or, as the government said, it was invited error. We disagree. But at a minimum, it's plain error. At least that because everybody, all three parties, ignored a crucial element in the calculation of the loss. The foreclosure costs and the interest should have been deducted. So even if we agree with you as to whether foreclosure costs should be calculated or deducted? Exactly. One last point, if I may. The government did have this hearing where they tried to bring in all this evidence about his exorbitant lifestyle. The district court basically said, I can't deal with this. It's in the record. I can't deal with this. I can't understand it. I'm not accepting it. And threw out all of this relevant condom. And then at the other end, punished him for what it basically didn't understand or find. The Hilgers case in this circuit has basically said that an enhancement, for lack of a better term, of three times the maximum of the guideline should be viewed essentially with greater scrutiny. And that's what we're asking that this happen in this case. Here, the maximum sentence that was applied with the guidelines of 12 to 18 was bumped by more than three times, to 16 months. And I think on the basis of which the district court did that, it was improper and substantively unreasonable. Thank you. Thank you. The case just argued will be submitted. The next case on the calendar is submitted also. The next case for argument is United States v. Mongolia.
judges: Breyer, Reinhardt, Fletcher